IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00166-RBJ

HANNAH COKER and ALLISON JOHNSON,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

ZURICH AMERICAN INSURANCE COMPANY,
a foreign corporation; AMERICAN ZURICH
INSURANCE COMPANY, a foreign corporation;
and THE ZURICH SERVICES CORPORATION, a
foreign corporation,

    Defendants

## UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT[1]

Plaintiffs Hannah Coker and Allison Johnson, and Opt-In Plaintiff Spencer Lewis (collectively "Plaintiffs"), by and through counsel, move for an Order approving the settlement agreement reached by the parties, which resolves Plaintiffs' lawsuit asserting claims under the Fair Labor Standards Act of 1938, as amended (hereinafter "FLSA"). Defendants Zurich American Insurance Company, American Zurich Insurance Company and Zurich Services Corporation (collectively, "Zurich") do not oppose this Motion. As grounds for their motion, Plaintiffs state as follows:

---

[1] This Motion has been drafted by Plaintiffs' counsel. While Zurich does not necessarily agree with some of the specific assertions contained in this Motion, Zurich does not oppose any of the terms of the parties' Settlement Agreement and joins in seeking approval of the Settlement Agreement from the Court.

## I.     INTRODUCTION

The settlement memorialized in the Parties' Settlement Agreement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange and contested litigation, and was the result of arm's length settlement negotiations conducted by experienced counsel well versed in wage and hour law, including a day-long mediation and subsequent negotiations thereafter.  Accordingly, the Parties request that the Court:  (1) approve as fair, adequate and reasonable the $22,400.85 settlement set forth in the Settlement Agreement (Exhibit A); (2) dismiss the Lawsuit with prejudice; (3) award Plaintiffs' attorneys fees and costs in the amount of $77,599.15 (with $6,819.64 of this amount representing costs actually incurred)[2]; and (4) retain jurisdiction to enforce the settlement.

## II.    PROCEDURAL HISTORY

On August 19, 2016, Plaintiffs' Counsel sent a letter to Zurich detailing Plaintiffs' claims that Zurich violated the FLSA by allegedly failing to pay call center Plaintiffs and other similarly-situated hourly, non-exempt Zurich Customer Care Representatives ("CCRs") all earned wages for all overtime worked, and inviting the parties to discuss potential resolution without the need for litigation.  *Declaration of Gregg I. Shavitz* ("Shavitz Dec.") at ¶ 5, attached hereto as Exhibit B.  While Zurich denied the allegations in their entirety, the parties agreed to execute a tolling agreement to permit pre-suit discussions to continue, and began exchanging data and documents to further analyze the claims.  *Id*.  During the course of their

---

[2]     Undersigned counsel is mindful of the Court's directive that Plaintiff's counsel should not receive a fee award that is an "unreasonably large portion of a monetary settlement in relation to the plaintiffs."  Docket #47.  For the reasons stated herein, counsel believes the proposed fee award is reasonable but the Agreement allows the Court to reduce the award if it disagrees, with Zurich to retain those attorneys' fees not approved by the Court.

information exchange, Plaintiffs attempted to ascertain the size and scope of the putative collective at issue. *Id.* at ¶ 6. However, Zurich was unwilling to share this information at that time, but rather, only provided information, data, and documents related to Plaintiffs' individual claims.[3] *Id*. Ultimately, the parties were unable to reach a resolution, necessitating the filing of the instant matter.

On January 22, 2017, named Plaintiffs Hannah Coker and Allison Johnson filed a national collective action and Colorado state law class action Complaint and Jury Demand ("Complaint") alleging that they and all other similarly situated CCRs were required to perform work before the start and after the end of their shifts and through their meal breaks, but were not paid for this work. Docket #1. Plaintiff Spencer Lewis subsequently filed a consent form to join the action. Docket #6. Plaintiffs' Complaint was filed as a national collective based on Plaintiffs' belief, which had not been discounted during pre-suit discussions, that there were two or more call centers at issue throughout the United States. *Id*.

Shortly after commencement of this matter, Zurich filed a M*otion to Dismiss Plaintiffs' State-Law Claims* [Docket #16], and subsequently, a *Motion to Strike* a term in Plaintiffs' Complaint's prayer for relief [Docket #26]. *Id.* at ¶ 7. In order to minimize unnecessary expense and legal fees, Plaintiffs effectively conceded both of these motions by dismissing their state law claims and dropping any claim for punitive damages. *Id.* It should be noted that Zurich's *Motion to Strike* could have been resolved without any briefing had Zurich simply "met and conferred" with Plaintiffs regarding its intention file a Motion to Strike before doing so.[4] *Id. See* Plaintiffs' Notice of Non-Opposition to Defendants' Motion to Strike, Docket

---

[3] Zurich disputes this claim.
[4] While Zurich did propose language in a draft of the parties' Proposed Scheduling Order that "Plaintiffs voluntarily dismiss their claims for punitive damages," and ultimately Zurich

3

#34, n.1 ("Had Defendants first conferred with Plaintiffs prior to filing their Motion to Strike, Plaintiffs note that they would have gladly stipulated to striking the solitary reference to "punitive damages" from their Amended Complaint in order to preserve the Court's and the parties' resources.").

Thereafter, over the course of the following three months, the parties engaged in discovery. *Id.* at ¶ 8. Plaintiffs and Zurich both issued and responded to interrogatories and requests for production, and took depositions of the three plaintiffs and Zurich's Fed. R. Civ. Proc. 30(b)(6) corporate representative. *Id.*

The parties agreed that the time period immediately following the completion of discovery and prior to conditional certification presented the best opportunity to resolve this matter. *Id.* at ¶ 9. At this point in the litigation, both sides faced soon-to-be-realized, significant risk such as, fees and costs to be expended on "representative" discovery (which would yield discovery helpful to one party or the other), final certification/decertification of the collective, and dispositive motion briefing. *Id.* The litigation risk for both parties provided an opportunity for a favorable resolution on Plaintiffs' individual claims above and beyond what they might otherwise expect had litigation continued. *Id.* Thus, on August 22, 2017, the parties conducted a day long mediation with the aid of experienced and well-regarded mediator Kathryn E. Miller, Esq. While they made significant progress, the parties were unable to settle at that time. *Id.*

Although the matter was not settled at mediation, the parties continued to discuss their positions over the course of the next approximately 45 days. *Id.* at ¶ 10. Subsequently, on

---

included in the Proposed Scheduling Order that it believed "Plaintiffs are not entitled to punitive damages, employment taxes, or service payments under the FLSA," [Docket #25 at 8], Plaintiffs argue they were unaware Zurich intended to file a Motion to Strike the punitive damages language until after it had been filed.

4

October 6, 2017, the parties executed the Settlement Agreement, subject to the Court's approval. *Id.* Under the Settlement Agreement, the three Plaintiffs collectively will receive $22,400.85, which is at least *four* times their reported unpaid wages. *Id.*; Ex. A. at ¶¶ 1-2. Given that FLSA liquidated damages would only double the amount of unpaid wages, this settlement amount is a significant windfall for Plaintiffs. Shavitz Dec. at ¶¶ 10, 12.

Only after negotiating this damages payment to Plaintiffs did undersigned counsel separately negotiate a fair and reasonable payment for their incurred fees and expenses, based on a reduction of the actual fees incurred to date and the outcome achieved for the Plaintiffs. *Id.* at ¶ 11. Although Plaintiffs' Counsel's actual lodestar investment in this case was approximately $106,550.00, *id.* at ¶¶ 25, 27; *Declaration of Brian D. Gonzales* ("Gonzales Dec.") at ¶ 15, attached hereto as Exhibit C, representing 266.2 hours billed in prosecuting this matter, and Plaintiffs' Counsel's costs incurred to date are $6,819.64, Shavitz Dec. at ¶¶ 26-27; Gonzales Dec. at ¶ 15, the parties ultimately agreed to $77,599.15 in fees and costs. Ex. A. at ¶¶ 1, 2(g). In light of the fact that attorneys' fees and expenses were negotiated only after and exclusive of payment to the Plaintiffs, the Parties agreed that any reduction in Plaintiffs' Counsel's fee award and cost will revert back to Zurich.[5] Shavitz Dec. at ¶ 11.

### III.   STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS

Courts addressing the question of whether, and under what circumstances Department of Labor ("DOL") or court approval of FLSA settlements is required base their analysis on two Supreme Court cases, *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697 (1945) and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946). In *Brooklyn Savings*, the Court held that employees could

---

[5]   Plaintiffs do not know the amount of attorney's fees and costs incurred by Zurich's attorneys in defense of this matter but, if the Court were inclined to ask, that amount might provide a suitable reference point.

not waive their rights to full damages and liquidated damages in a private settlement where there was no bona fide dispute regarding the amount of wages owed. 324 U.S. at 704. In *D.A. Schulte*, the Court barred enforcement of private settlements where the dispute centered on whether an employer is covered under the FLSA. 328 U.S. at 114. Those cases left open the question of whether there can be an enforceable private settlement of FLSA claims where there is a bona fide dispute regarding liability, such as the number of hours worked or the amount due. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d Cir. 2014). While the Tenth Circuit is yet to address the question directly, this Court has held that private settlements of FLSA claims are enforceable without the need for court approval. *See, e.g.*, *Tapest, et al. v. PS Camping, Inc., et al.*, No. 1:16-cv-01340-MSK-CBS, D.E. 55, at 1-2 ("the Court's position [is] that it no longer believe[s] that routine court approval of [FLSA] settlement [is] required, or even appropriate.") (Krieger, *Chief J.*).

Nonetheless, in order to resolve these claims, Zurich has insisted on the additional expense of a Court-approval process. Therefore, the District Court must scrutinize the settlement for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353, 1355. When the parties' settlement reflects a reasonable compromise over issues, such as FLSA coverage and computation of back wages which were disputed, the Court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Id.* at 1354. Here, as explained above, Plaintiffs will recover far more under this settlement of disputed claims than they ever could recover if litigation continued – even considering applicable FLSA double liquidated damages. Shavitz Dec. at ¶¶ 10, 12. Thus, this settlement is fair and reasonable, and should be approved.

Similarly, given that Plaintiffs' Counsel's fees and costs are were negotiated independently of any award to Plaintiffs such that any amounts not approved would be retained by Zurich, and that the fees and costs are demonstrably fair and reasonable in light of the work actually performed to date to secure this favorable outcome for Plaintiffs, representing a significant comprise over the actual amounts incurred by Plaintiffs' Counsel, this Court should approve the fee and cost award sought by Plaintiffs.

## IV. ARGUMENT

Settlement "[a]pproval is appropriate upon demonstration that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Manohar v. Sugar Food LLC*, 2017 U.S. Dist. LEXIS 116893, at *4 (D. Colo. July 26, 2017) (citing *Baker v. Vail Resorts Management Co.*, 2014 U.S. Dist. LEXIS 22812, at *1 (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982))). The parties' settlement represents a fair, just, and reasonable resolution of Plaintiffs' alleged FLSA claims and any remaining disputes between the parties. The parties extensively negotiated to resolve this matter. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients.

### A. Bona Fide Disputes Exist

The settlement of the present action involves a bona fide dispute. As discussed at length *supra*, Plaintiffs alleged that they were owed for time worked before and after their shifts and during meal breaks, extending the time they worked beyond the 40-hour overtime threshold. Zurich denies that Plaintiffs were owed any overtime wages.

The parties were facing the prospect of pursuing the collective action, which would have

required extensive post-certification discovery, motion practice, securing final certification, overcoming Zurich's eventual dispositive motion, and winning at trial. Had Plaintiffs prevailed at summary judgment or trial, the Court would require Zurich to pay a monetary verdict in favor of Plaintiffs, as well as their legal fees and costs in addition to Zurich's own fees and costs. If Zurich prevailed at summary judgment or trial, Plaintiffs would not recover any damages and Zurich may have sought the recovery of certain statutory costs from Plaintiffs.

### B.  The Settlement is Fair and Reasonable to Plaintiffs.

In determining whether a settlement is fair and reasonable, courts have considered non-exclusive factors such as: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery." *Felix v. Thai Basil At Thornton, Inc.*, 2015 U.S. Dist. LEXIS 62020, at *5 (D. Colo. May 6, 2015). "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief. *Manohar*, 2017 U.S. Dist. LEXIS 116893 at *7-8 (internal citations omitted).

The Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, and likely duration of the litigation. Plaintiffs recognized the risks inherent in proceeding with the litigation in light of Zurich's arguments on the merits of the claims. Zurich recognized its potential exposure should the Plaintiffs succeed on final certification, summary judgment, or

trial. All Parties recognized that, had they not reached a settlement, extensive discovery, motion practice, a protracted trial, and possible appeal could have easily consumed many years of contentious and costly litigation.

Moreover, the settlement is appropriate at this stage of the proceedings. Aside from Plaintiffs' independent investigation, the parties exchanged Rule 26(a) disclosures; written discovery; and deposed four individuals, including the three Plaintiffs and Zurich's Rule 30(b)(6) representative. Zurich also produced – and Plaintiffs reviewed and analyzed – timekeeping information, data, and documents both during the course of discovery and thereafter to facilitate mediation and settlement discussions. The parties thus had sufficient information to assess the risks of liability and damages. Additionally, the settlement is a fantastic outcome for the three Plaintiffs, each of whom will receive more than four times their self-reported unpaid wages. Shavitz Dec. at ¶ 10.

While Plaintiffs were confident in their claims, Zurich would have argued that Plaintiffs' alleged unpaid time was non-compensable under federal law, *de minimis* and/or was unknown (actually or constructively) to Zurich. In other words, Plaintiffs faced multiple challenging defenses. Taking these considerations into mind, the amount of the settlement is appropriate in relation to the potential recovery.

### C. The Proposed Fee and Costs Award is Fair and Reasonable to Plaintiffs.

The Court should approve the fees and costs request because (1) they were negotiated separately from Plaintiffs' recovery; and (2) irrespective, are fair and reasonable under the circumstances. The court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "[T]here is a general preference that parties reach an agreement regarding

the fee award." *Manohar*, 2017 U.S. Dist. LEXIS 116893, at *12 (D. Colo. July 26, 2017) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Moreover, where "attorney's fees are negotiated separately from the payment to plaintiff(s)," district courts throughout the country, including this Court, have held that "'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents." *Gertz v. Coastal Reconstruction*, 2014 U.S. Dist. LEXIS 130302, *5 (M.D. Fla. Sept. 10, 2014) (citing *McGinnis v. Taylor Morrison*, Inc., 2010 U.S. Dist. LEXIS 143198 (M.D. Fla. Jan. 23, 2010); *see Anderson v. Walgreen Co.*, 2016 U.S. Dist. LEXIS 1740, at *11 (D. Colo. Jan. 7, 2016) (where "Plaintiffs' recovery is addressed independently of attorneys' fees . . . Plaintiffs' FLSA claim will not be compromised by the deduction of attorney's fees, costs, or expenses"); *Ramirez v. 3 Margaritas XVIII, Inc.*, 2013 U.S. Dist. LEXIS 59273, at *8 (D. Colo. Apr. 25, 2013) (granting attorney fee award request "[g]iven that plaintiffs' settlement award is not affected by the possible award of attorneys' fees, [and thus] there is no conflict of interest between plaintiffs' interests and that of their attorneys."); *see also Williams v. Omainsky*, 2017 U.S. Dist. LEXIS 11429, at *6 (S.D. Ala. Jan, 27, 2017) (finding that the proposed attorney's fees were reasonable and plaintiff's recovery was not tainted by a conflict of interest or otherwise adversely affected by the negotiated fee award, upon the parties' representation "that they negotiated the attorney's fees . . . only after coming to an agreement on back pay and liquidated damages"); *see also Martin v. Huddle House, Inc.*, 2011 U.S. Dist. LEXIS 13670 (N.D. Ga. Feb. 11, 2011); *Marshall v. Good Vocations, Inc.*, 2013 U.S. Dist. LEXIS 13480 (S.D. Ga. Jan. 21, 2013); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). "As long as counsel does not seek to recover anything further from Plaintiff, the recovery is not compromised by the fee agreement and the Court sees no reason to review it further." *Garzon v. ProSweep Cent. Fla.,*

*LLC*, 2011 U.S. Dist. LEXIS 134703, *6 (M.D. Fla. Nov. 17, 2011); *see also Ramirez v. 3 Margaritas XVIII, Inc.*, 2013 U.S. Dist. LEXIS 59273, at *8 (D. Colo. Apr. 25, 2013) (same). Thus, there is "no need to further scrutinize amount allocated for attorneys' fees and costs [as] they were negotiated separately and apart from the compensation paid to Plaintiff." *Welch v. Moonlite Hospitality Servs.*, *LLC*, 2011 U.S. Dist. LEXIS 137145, *5, n. 2 (M.D. Fla. Nov. 28, 2011) (citations omitted).

Regardless of the approach taken, in considering the fee award, the Court should recognize that disparities between wages recovered and attorney's fee awards are quite common in FLSA litigation. "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *citing United Slate, Tile & Composition Roofers v. G&M Roofing and Sheet Metal Co.*, 732 F.2d 495 (6th Cir. 1984). Since such claims frequently are for small amounts of money, "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourages the vindication of congressionally identified policies and rights.'" *Id*. "Indeed, [courts] have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley,* 19 F.3d at 1134, *citing Posner v. The Showroom, Inc.,* 762 F.2d 1010 (6th Cir. 1985); *see, e.g., Fegley*, 19 F.3d at 1130-35 (upholding $40,000 in attorney's fees for recovering $7,680 in back pay for a single plaintiff); *Heder v. City of Two Rivers*, 255 F.Supp.2d 947, 955, 962 (E.D. Wisc. 2003) (awarding $36,204 in fees on a $3,540 back pay award to a single plaintiff); *Albers v. Tri-State Implement, Inc*., 2010 WL 960010, *26 (D.S.D. 2010) (awarding $46,424 in fees on a $3,274 back pay award to two plaintiffs).

If the FLSA required attorney's fees to be strictly proportionate to the amount of wages at issue, individuals with small claims effectively would be denied access to counsel. *Heder*, 255 F.Supp.2d at 955 (requiring proportionality "'would in reality prevent individuals with relatively small claims from effectively enforcing their rights.'"), citing *Hodgson v. Miller Brewing Co*., 457 F.2d 221, 228-29 (7th Cir. 1972). In other words, only large employers who had deprived employees of hundreds of thousands of dollars in wages ever would need to be concerned about wage litigation.[6] Smaller employers could engage in wage theft with impunity.

Here, Plaintiffs' request for reasonable attorneys' fees and costs should be approved as the fees were negotiated separately from awards to Plaintiffs and any amounts not approved would not revert to Plaintiffs, but rather, be retained by Zurich. *See Anderson*, *Ramirez*, *supra*.

Notwithstanding, should the Court decide to review the fee request further, the fees sought are reasonable given the actual work performed to achieve this resolution for Plaintiffs—reflecting four times the amount they were claiming, and in light of the fact that, as explained in the attached declarations, counsel are taking a significant discount on the attorney's fees necessary to negotiate this settlement for Plaintiffs. Shavitz Dec. at ¶¶ 10-12, 25, 2; Gonzales Dec. at ¶ 14. To date, Plaintiffs' Counsel have incurred a total of $106,550.00 in fees (representing 266.2 hours of billed time) and $6,819.64 in costs. Shavitz Dec. at ¶ 25-27; Gonzales Dec. at ¶ 15. Plaintiffs' Counsel's rates—representing $500.00 per hour for Brian Gonzales, $500.00 per hour for Gregg I. Shavitz, and $350.00 per hour for Paolo C. Meireles—are in line with rates previously approved by this Court. *See,* Gonzales Dec. at ¶¶ 11-12; Shavitz

---

[6]   This would be unfortunate because researchers have determined that "Coloradoans are losing an estimated $750 million a year in pay and benefits from nonpayment of lawfully owed wages", e.g., the "time shaving" at issue in this lawsuit. Gonzales Dec. at ¶ 9.

Dec. at ¶ 25, n.1. In light of actual costs incurred, the fees requested here represent only approximately 66% of the actual fees incurred. Shavitz Dec. at ¶ 27; Gonzales Dec. at ¶ 15.

## V.   CONCLUSION

For all the above reasons, the parties respectfully request an order: (1) approving the Settlement Agreement, including the releases of claims, the payments to the three Plaintiffs, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety with prejudice; and (3) retaining jurisdiction to enforce the terms of the Settlement Agreement.

Dated: October 30, 2017

*/s/ Gregg I. Shavitz*
Gregg I. Shavitz
Paolo Meireles
**SHAVITZ LAW GROUP, P.A.**
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
gshavitz@shavitzlaw.com
pmeireles@shavitzlaw.com

Brian D. Gonzales
**THE LAW OFFICES OF**
**BRIAN D. GONZALES, PLLC**
2580 East Harmony Road, Suite 201
Fort Collins, CO 80528
970.214.0562
BGonzales@ColoradoWageLaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2017, a true and correct copy of the foregoing **UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT** was served electronically on the following:

Steven W. Moore, Esq.
Dawn M. Amos, Esq.
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
600 17th Street, Suite 2700-S
Denver, Colorado 80202
smoore@constangy.com
damos@constangy.com

*/s/ Gregg I. Shavitz*
Gregg I. Shavitz