# SETTLEMENT AGREEMENT

This Settlement Agreement (hereinafter referred to as the "Agreement") is entered into by and between Hannah Coker ("Coker"), Allison Johnson ("Johnson"), Spencer Lewis ("Lewis") (collectively "the Employees"), and Zurich American Insurance Company ("ZAIC"), American Zurich Insurance Company ("AZIC"), and Zurich Services Corporation ("ZSC"), all collectively referred to as the "Parties". In this Agreement, "Zurich" or the "Company" refers to ZAIC, AZIC, ZSC and their current and former parent companies, subsidiaries and affiliates, as well as each of their current and former officers, directors, agents, employees, attorneys, stockholders, successors, and assigns.

WHEREAS, Coker and Johnson filed a lawsuit against Zurich in the United States District Court for the District of Colorado entitled *Coker, et al. v. Zurich American Insurance Co., et al.*, Docket No. 1:17-cv-00166-RBJ, alleging violations of the Fair Labor Standards Act, as amended ("FLSA") (hereinafter "the Lawsuit"), to which Zurich filed responsive pleadings denying all such allegations;

WHEREAS, in the Lawsuit, the Employees alleged that Zurich failed to properly pay overtime compensation and allege that they worked during unpaid meal periods;

WHEREAS, in the Lawsuit, Zurich contended that they accurately paid overtime to the Employees and correctly paid them for all work they performed;

WHEREAS, Coker and Johnson filed the Lawsuit on behalf of themselves and all Customer Care Representatives working in any Zurich Call Center within the last three years;

WHEREAS, the Lawsuit has not been conditionally certified pursuant to Section 216(b) of the FLSA;

WHEREAS, the Employees filed notices of consent to be party plaintiffs;

WHEREAS, Zurich denies each and every allegation of liability and wrongdoing that was asserted or could have been asserted by the Employees or any members of the purported class, and asserts that it has factual and legal defenses to all claims alleged in the Lawsuit;

WHEREAS, all Parties to this Agreement wish to avoid the time and expense which would be necessitated by further proceedings regarding the allegations in the Lawsuit and wish to effect complete accord and satisfaction of any and all charges, complaints or claims that have or could have been brought from the beginning of time to the Effective Date of this Agreement, whether arising under local, state, or federal law or contract.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the Parties to this Agreement agree as follows:

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

---

1. The Parties agree that the Employees will file a motion (the "Motion") with the United States District Court for the District of Colorado, requesting that this Agreement, including attorneys' fees and costs, be approved and that the Lawsuit be dismissed with prejudice, except that the Court will retain jurisdiction over this Agreement to enforce the terms of the Agreement. The Company agrees not to dispute or oppose court approval of the settlement, the terms stated in this agreement, and/or the amount of attorneys' fees and costs sought, so long as the attorneys' fees and costs sought do not to exceed $77,599.15. The effective date of this Agreement shall be the date that the Court grants the Motion, approves this Agreement and dismisses the Lawsuit with prejudice ("Effective Date"). However, with the exception of a reduction in attorneys' fees as referenced in paragraph 2(g) below, in the event that the Court denies the Motion, does not approve this Agreement, or declines to dismiss the Lawsuit with prejudice, the Parties agree and acknowledge that this Agreement shall be null and void and have no effect.

2. In consideration for the Employees' promises made herein, and upon the Court approving this Agreement and dismissing the Lawsuit with prejudice, Zurich shall pay the sum of One Hundred Thousand AND 00/100 DOLLARS ($100,000.00) ("Settlement Sum") to the Employees and their attorneys, as set forth below. Payment of the Settlement Sum will be in seven (7) checks as follows:

   a. Zurich agrees to pay one check in the gross amount of $2,850.84, less applicable federal, state, and local withholding deductions, representing a compromise and settlement of any and all claims by Coker against the Company for alleged unpaid wages, overtime wages, back pay, and other monetary damages. Coker must complete and return a signed W-4 in order for payment to be processed by the Company. For income tax purposes, the Company agrees to issue Coker an IRS Tax Form W-2 reflecting the amount in this subparagraph at the appropriate time pursuant to IRS regulations. The check will be made payable to "Hannah Coker."

   b. Zurich agrees to pay a second check in the amount of $2,850.84, representing a compromise and settlement of any and all claims by Coker for alleged liquidated damages. For income tax purposes, the Company agrees to issue Coker an IRS Tax Form 1099 reflecting the amount in this subparagraph as well as Coker's proportional share of attorneys' fees in paragraph 2(g) at the appropriate time pursuant to IRS regulations. Coker must complete and return a signed W-9 in order for payment to be processed by the Company. The check will be made payable to "Hannah Coker."

   c. Zurich agrees to pay a third check in the gross amount of $2,621.11, less applicable federal, state, and local withholding deductions, representing a compromise and settlement of any and all claims by Johnson against the Company for alleged unpaid wages, overtime wages, back pay, and other

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

---

monetary damages. Johnson must complete and return a signed W-4 in order for payment to be processed by the Company. For income tax purposes, the Company agrees to issue Johnson an IRS Tax Form W-2 reflecting the amount in this subparagraph at the appropriate time pursuant to IRS regulations. The check will be made payable to "Allison Johnson."

d. Zurich agrees to pay a fourth check in the amount of $2,621.11, representing a compromise and settlement of any and all claims by Johnson for alleged liquidated damages. For income tax purposes, the Company agrees to issue Johnson an IRS Tax Form 1099 reflecting the amount in this subparagraph as well as Johnson's proportional share of attorneys' fees in paragraph 2(g) at the appropriate time pursuant to IRS regulations. Johnson must complete and return a signed W-9 in order for payment to be processed by the Company. The check will be made payable to "Allison Johnson."

e. Zurich agrees to pay a fifth check in the gross amount of $5,728.48, less applicable federal, state, and local withholding deductions, representing a compromise and settlement of any and all claims by Lewis against the Company for alleged unpaid wages, overtime wages, back pay, and other monetary damages. Lewis must complete and return a signed W-4 in order for payment to be processed by the Company. For income tax purposes, the Company agrees to issue Lewis an IRS Tax Form W-2 reflecting the amount in this subparagraph at the appropriate time pursuant to IRS regulations. The check will be made payable to "Spencer Lewis."

f. Zurich agrees to pay a sixth check in the amount of $5,728.47, representing a compromise and settlement of any and all claims by Lewis for alleged liquidated damages. For income tax purposes, the Company agrees to issue Lewis an IRS Tax Form 1099 reflecting the amount in this subparagraph as well as Lewis's proportional share of attorneys' fees in paragraph 2(g) at the appropriate time pursuant to IRS regulations. Lewis must complete and return a signed W-9 in order for payment to be processed by the Company. The check will be made payable to "Spencer Lewis."

g. Zurich agrees to pay $77,599.15, representing attorneys' fees and costs incurred on the Employees' behalf for the filing and prosecution of the Lawsuit. For income tax purposes, the Company shall issue an IRS Tax Form 1099-MISC to Shavitz Law Group, P.A. at the appropriate time pursuant to IRS regulations. The check will be made payable to "Shavitz Law Group, P.A." Shavitz Law Group, P.A. must complete and return a signed W-9 in order for payment to be processed by the Company. Should the Court reduce the amount of agreed upon attorneys' fees and costs payable to the Employees' counsel, the unapproved amounts shall revert to and be retained by Zurich.

The checks will be prepared and sent to the Shavitz Law Group, P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, Florida 33432 within the later of 28 days after the receipt of the signed Agreement and other documentation required by Paragraph 2 above, or three business days of the Court's approval of this Agreement. The checks will be delivered to the law offices of Shavitz Law Group, P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, Florida 33432.

3. The Employees acknowledge and agree that neither the Company, their counsel and/or Employees' counsel have made any representations to them regarding the tax consequences of any amount received by them pursuant to this Agreement. The Employees represent and agree that they are solely responsible for any taxes that may be determined to be due and owing as a result of the payments called for by this Agreement. The Employees further agree to indemnify and hold the Company harmless from any and all claims made against the Company for back taxes owed or for statutory withholding amounts, including any penalties, costs or legal fees incurred, relating to the payments made pursuant to this Agreement, except for any employer contributions to FICA and Medicare that may be assessed to Zurich. The Employees agree to consult with their own tax advisors regarding the tax implications of this Agreement.

4. In exchange for the Settlement Sum described in this Agreement, and other agreements stated in this Agreement, the Employees, for themselves and anyone who has or who obtains legal rights or claims from them, each forever release and discharge Zurich and each of Zurich's current and former parent companies, subsidiaries, affiliates, and current and former officers, directors, agents, employees, attorneys, stockholders, successors, and assigns, from any and all claims and causes of action arising on or before the Effective Date of this Agreement, whether known or unknown, foreseen or unforeseen, and whether asserted or not. This includes but is not limited to a release of: (a) any claim asserted or which could have been asserted in the Lawsuit, including all claims arising out of or in any way related to the FLSA, as amended; (b) any rights or claims they may have pursuant to any federal, state, or local law, including, without limitation, the following federal and state statutes, each as amended, and their corresponding regulations: Title VII of the Civil Rights Act of 1964; the FLSA; the Employee Retirement Income Security Act; the Americans with Disabilities Act of 1990; the Civil Rights Act of 1991; the Civil Rights Acts of 1866 and 1871; the Equal Pay Act of 1963; the Family and Medical Leave Act of 1993; the National Labor Relations Act; the Occupational Safety and Health Act of 1970; the Rehabilitation Act of 1973; the Consolidated Omnibus Budget Reconciliation Act of 1985; Sections 1981 through 1988 of Title 42 of the United States Code; the Genetic Information Nondiscrimination Act; the Fair Credit Reporting Act; the Lilly Ledbetter Fair Pay Act of 2009; the Immigration Reform and Control Act of 1986; the Worker Adjustment and Retraining Notification Act; the Uniformed Service Employment and Reemployment Rights Act; the Electronic Communication Privacy Act of 1986 (including the Stored Communications Act); the Colorado Anti-Discrimination Act; the Colorado Wage Claim Act, Minimum Wage Order, Minimum Wage of Workers Act, and Wage Equality Regardless of Sex Act; the Colorado Workers' Compensation Act; the Colorado Unlawful Prohibition of Legal Activities Statute; and the Colorado Job References/Blacklisting Law, C.R.S. § 8-2-110 – 8-2-111.5; and (c) any

common law or statutory claims for allegedly unpaid wages, overtime, bonuses, compensation, damages, tort, breach of express or implied contract, breach of duty of good faith, discrimination, harassment, wrongful discharge, intentional or negligent infliction of emotional distress, defamation and for any other damages or injuries incurred on the job, in relation to employment or incurred as a result of loss of employment. The Employees understand and agree that this release includes and encompasses herein any and all claims with respect to attorneys' fees, costs, and expenses (provided by statute or otherwise) for or by any and all attorneys who have represented them or with whom they have consulted or who have done anything in connection with the Lawsuit and/or any of the claims released herein, other than those to be paid pursuant to this Agreement. Zurich represents that it is not currently aware of any possible or potential claims against the Employees.

5. The release in Paragraph 4 notwithstanding, the Employees understand, agree and acknowledge that nothing contained in this Agreement will prevent them from taking any of the following actions: (a) filing a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Securities and Exchange Commission, and/or any governmental authority charged with the enforcement of any laws (the "Agencies"); (b) reporting possible violations of any law or regulation to any of the Agencies; or (c) making disclosures to, and/or participating in any investigation or proceeding conducted by any of the Agencies, though Employees waive any right to any personal recovery in any action or proceeding that may be commenced on Employees' behalf with any federal or state agency in any way arising out of or relating to the matters released in this Agreement.

6. The Employees represent and warrant that they have not heretofore given, sold, assigned or transferred or purported to give, sell, assign or transfer any claim discussed in this Agreement or any part or portion thereof to any person, firm, corporation, association or entity. Coker, Johnson and Lewis agree to indemnify and hold Zurich harmless from and against any claim, demand, damages, debt, liability, account, reckoning, obligation, cost, expense, lien, action and cause of action (including the payment of attorneys' fees and costs actually incurred whether or not litigation be commenced) based on, in connection with, or arising out of any such actual gift, sale, assignment or transfer.

7. The Employees agree to refrain from making any oral or written statements about the Company, its products or services, that are adverse to the Company's business interests or reputation in the marketplace; provided, however, that this provision shall not interfere with the Employees' ability to communicate with public agencies in the course of an investigation of an administrative charge of employment discrimination or other investigation or to provide information required by a lawful subpoena, a court order or where otherwise mandated by law. Likewise, Company agrees that the following management employees at the Call Center will not make such remarks about the Employees: Jack Dawson, Joy Fetters, LaRonda Taylor, Andrew Atkinson, Danielle Ophus, Natalie Kliewer, and Felicia Garcia. Nothing in this paragraph is intended or should be construed to broaden Company's obligations for actions taken by its employees for which the Company would not otherwise be responsible under principles of vicarious liability.

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

---

8. By signing this Agreement, the Employees represent and agree that they will not apply for or otherwise seek employment with ZAIC, AZIC, ZSC at any time in the future; that they waive any and all rights they may have under any contract, law, or other source of rights to employment with Zurich; that they are not eligible for employment with Zurich; and that it is their intention to withdraw forever from the prospective pool of applicants seeking employment with Zurich. The Employees further agree that if they violate this Agreement and apply for employment with Zurich and are rehired, their employment may be terminated without subjecting Zurich to any liability as a result of such termination.

9. In accordance with Company policy, the Company does not provide employment references. The Company utilizes The Work Number (800-367-5690 or www.theworknumber.com) to provide specific employment verification information. Provided that the Employees direct any potential, future employers to The Work Number, the Company will provide dates of employment, job title, and salary information for the particular Employee, as applicable.

10. The Company makes this Agreement to avoid the cost of defending against the Lawsuit and/or any future legal action. By making this Agreement, the Company does not admit that the Company violated any federal, state, or local law, rule, regulation, or ordinance, or that any action taken with respect to Coker, Johnson or Lewis, or the purported class was wrongful or unlawful or that the Company breached any of its policies or procedures.

11. This Agreement is the whole Agreement between the Parties and supersedes any and all prior agreements between Coker and the Company, Johnson and the Company, and Lewis and the Company, except that, if any of the Employees previously entered into any agreement(s) with the Company containing provisions governing confidential information, trade secrets, non-competition or non-solicitation, such provisions shall remain in full force and effect. Other than as stated herein, the Parties acknowledge that no promise or inducement has been offered for this Agreement and that this Agreement is executed without reliance on any statement of the Parties, or the Parties' representatives. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party. Further, this Agreement may not be amended except by written agreement executed by duly authorized representatives of all Parties.

12. This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same instrument. This Agreement shall not be binding until it is executed by all Parties and approved by the Court.

13. The failure by any Party to enforce at any time any of the provisions of this Agreement or to require at any time performance by another Party of any of the provisions herein shall in no way be construed to be a waiver of such provision or to affect the validity thereof.

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

---

14.  This Agreement shall in all respects be interpreted, enforced and governed according to the laws of the State of Colorado, without giving effect to the conflict of laws principles of said State.

15.  The Employees acknowledge that they are represented by counsel and prior to the execution of this Agreement, they apprised themselves of sufficient relevant information to exercise their own considered judgment when deciding whether to execute this Agreement. The Employees declare they have had the opportunity to review the contents of this Agreement and that it is executed voluntarily and with full knowledge of its consequences. The Employees further declare their decision to enter into this Agreement was not predicated or influenced by any declaration or representation of any of the corporations or entities released other than as may be contained in this Agreement.

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

Executed this __6th__ day of __October__, 2017.

_____
Hannah Coker

On this __6th__ day of __October__, 2017, before me, __Hannah Leigh Coker__, the undersigned notary public, personally appeared Hannah Coker, and proved to me through satisfactory evidence of identification, namely __Drivers License__, to be the person whose name is signed on the preceding.

```
WESLEY KELLY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174004081
MY COMMISSION EXPIRES JANUARY 26, 2021
```

Signature and Seal of Notary Public

My commission expires: __1-26-2021__

Executed this _____ day of _____, 2017.

_____
Allison Johnson

On this _____ day of _____, 2017, before me, _____, the undersigned notary public, personally appeared Allison Johnson, and proved to me through satisfactory evidence of identification, namely _____, to be the person whose name is signed on the preceding.

_____
Signature and Seal of Notary Public

My commission expires: _____

Page 8 of 10

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

_____

Executed this _____ day of _____, 2017.


_____
Hannah Coker

On this _____ day of _____, 2017, before me, _____, the undersigned notary public, personally appeared Hannah Coker, and proved to me through satisfactory evidence of identification, namely _____, to be the person whose name is signed on the preceding.


_____
Signature and Seal of Notary Public

My commission expires: _____


Executed this __3rd__ day of __October__, 2017.

_____
Allison Johnson

On this __3rd__ day of __October__, 2017, before me, __Hailey Smith__, the undersigned notary public, personally appeared Allison Johnson, and proved to me through satisfactory evidence of identification, namely __Colorado Drivers License__, to be the person whose name is signed on the preceding.

HAILEY D. SMITH
Notary Public
State of Colorado
Notary ID # 20174031079
My Commission Expires 07-24-2021

_____
Signature and Seal of Notary Public

My commission expires: __07/24/21__

Page 8 of 10

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

---

Executed this __06__ day of __October__, 2017.

_____
Spencer Lewis

On this __06__ day of __October__, 2017, before me, __Jennie Allen__, the undersigned notary public, personally appeared Spencer Lewis, and proved to me through satisfactory evidence of identification, namely __Spencer Lewis__, to be the person whose name is signed on the preceding.

_____
Signature and Seal of Notary Public

My commission expires: __04/05/2021__

JENNIE ALLEN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174014608
MY COMMISSION EXPIRES APRIL 5, 2021

Settlement Agreement
Coker, Johnson, Lewis, & Zurich

---

                Zurich American Insurance Company, American Zurich Insurance Company and Zurich Services Corporation

By: *Peter J. Eckodt* (signature)

Title: Vice President

Executed this 19th day of October, 2017.