IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00166-RBJ

HANNAH COKER and ALLISON JOHNSON,
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

ZURICH AMERICAN INSURANCE COMPANY,
a foreign corporation; AMERICAN ZURICH
INSURANCE COMPANY, a foreign corporation;
and THE ZURICH SERVICES CORPORATION, a
foreign corporation,

      Defendants

---

## DECLARATION OF BRIAN D. GONZALES

---

I, Brian D. Gonzales, in accordance with the requirements of 28 U.S.C. §1746, hereby

declare:

1.     I am over the age of 18 and am competent to make the statements contained

herein.

2.     I am local counsel for Plaintiffs in this case.  I submit this Declaration in support

of Plaintiffs' *Motion for Approval of Settlement* (the "Motion").  Specifically, this Declaration

addresses the reasonableness of the attorney's fees and costs award sought by The Law Offices

of Brian D. Gonzales, PLLC (the "Firm").

3.     Attached hereto is a summary of my relevant educational and employment history

as well as a brief overview of my experience with complex litigation.  Since founding the Firm in

early 2008, I have been engaged almost exclusively in wage and hour litigation under the Fair

Labor Standards Act and analogous state laws.  In particular, I have been involved in numerous

class and/or collective actions relating to the failure to pay employees all wages due.  Most of

these have resulted in large awards of backpay to employees.

4.       Perhaps more importantly, these actions have forced employers to implement

extensive modifications to their employee compensation practices to conform to state and federal

requirements.  This, of course, is a primary goal of the federal and state wage and hour statutes,

which contain fee-shifting provisions intended to motivate "private attorneys' general" to

enforce the minimum wage.  In addition to benefiting employees, such enforcement also benefits

other employers by ensuring they are not put at a competitive disadvantage simply by electing to

comply with the law and pay their employees all earned wages.

5.       I currently am a member of the Board of Directors of Towards Justice, a non-

profit dedicated to "defending economic stability for working families by providing direct legal

services to low-wage workers, facilitating access to justice in wage theft cases, and strengthening

state and municipal worker protections."  *See* http://www.TowardsJustice.org.

6.       I also work with the Colorado Wage Theft Task Force, which consists of:

a) government regulators, including representatives from the United States Department of Labor

and Colorado Division of Labor; b) members of the interfaith worker justice community; and

c) representatives from worker advocacy groups such as El Centro Humanitario.  Recently,

Towards Justice and the Task Force have been engaged in efforts to revise and strengthen the

Colorado state wage and hour laws.  Through my work with these organizations, I generally am

aware that wage and hour violations are endemic in Colorado, particularly in the low wage service industries.

7.     For example, in 2008, researchers completed a "landmark survey of 4,387 workers in low-wage industries" and issued a report titled *Broken Laws, Unprotected Workers: Violations of Employment and Labor Laws in America's Cities*[1].  The researchers found that "many employment and labor laws are regularly and systematically violated, impacting a significant part of the low-wage labor force in the nation's largest cities." *Id* at 2.  More than two-thirds of the workers surveyed had "experienced at least one pay-related violation in the previous work week." *Id*. at 5.

8.     In 2014, the Economic Policy Institute issued the results of its study of workers in the 10 most populous U.S. states.[2]  The study determined that "2.4 million workers lose $8 billion annually (an average of $3,300 per year for year-round workers) to minimum wage violations . . . ." *Id*. at 1.  The study recognized that enforcement efforts and updates to the FLSA have failed to keep up with the increasing sophistication of employers in decreasing their labor budgets by shaving work time and dodging overtime rules. *Id*. at 3-6.

9.     Locally, the Colorado Fiscal Institute recently issued a report estimating that "Coloradoans are losing an estimated $750 million a year in pay and benefits from nonpayment of lawfully owed wages . . . ." *Wage Nonpayment in Colorado*[3], at 1.  Moreover, the Institute

---

[1] Available at: http://nelp.org/content/uploads/2015/03/BrokenLawsReport2009.pdf
[2] Available at: http://www.epi.org/publication/epidemic-wage-theft-costing-workers-hundreds/
[3] Available at:
  http://www.coloradofiscal.org/wp-content/uploads/2014/03/Wage-Nonpayment-in-Colorado-Final-1.pdf

noted that "[W]age nonpayment hurts all Coloradans, not just the affected workers. That's because it results in $25 million to $47 million in lost tax revenue — money that is needed to pay for schools and other important services — and the loss of $5 million to the state Unemployment Insurance Fund." *Id*. Finally, the Institute observed the impact of wage theft on fair competition among businesses: "Honest businesses who comply with the law are put at a disadvantage by unscrupulous competitors who engaged in wage nonpayment." *Id*. at 2.

10.     I have extensive experience litigating cases under state and federal wage and hour laws. *Whittington v. Taco Bell of America, Inc*., 2013 WL 6022972, *6 (D.Colo. 2013)("FLSA cases are not novel, but this is a specialized area of the law where some degree of extra skill is needed to litigate . . . ."). In particular, I have served and/or am serving as counsel in dozens of class and/or collective action suits relating to violations of state and federal wage and hour laws.

11.     In my professional opinion, an hourly billing rate of $500 per hour would be consistent with Denver market rates for an attorney with over 20 years of experience and an extremely specialized practice. Attached as Exhibit 2, is a **2003** summary of nationwide law firm billing rates published by the National Law Journal which lists billing rates for partners at two Denver firms of between $225 and $525 per hour. Similarly, a **2010** study of part-time partners at small to large Denver law firms, attached as Exhibit 3, reported partner hourly billing rates ranging from $175 to $715, with two-thirds of the respondents billing at rates higher than $300 per hour.

12.     Finally, the **2014** edition of the National Law Journal's annual Survey of Law Firm Economics, attached as Exhibit 4, reports a median billing rate of $440 per hour and a top ten percent rate of $537 per hour for lawyers in the mountain states with over 21 years of

experience.  The study also reports a median of $344 per hour and a top ten percent rate of $481 per hour for equity partners specializing in employment litigation.  Of course, this study likely includes many attorneys practicing outside major metropolitan areas like Denver as well as employment lawyers who do not practice complex class and collective action litigation.  *See, e.g., Nero v. Amer. Family Mut. Ins. Co.*, 2013 WL 5323191, **8-9 (D.Colo. 2013)(Brimmer) (surveying Denver market and finding rates between $450 and $500 per hour to be reasonable for attorneys with over twenty years of experience in complex litigation and class actions).

13.     With regard to paralegal rates, $125 to $150 per hour is a reasonable rate.  *See e.g., Home Loan Investment Co. v. St. Paul Mercury Ins. Co.*, 78 F.Supp3d 1307, 1319 (D.Colo. 2014); *Trujillo v. Campbell*, 2010 WL 1835245 (D.Colo. 2012);

14.     Of course, the rates addressed in the foregoing authorities presumably are for work billed hourly and not for cases involving contingent risk and a lengthy delay in payment. The Firm commenced this case at the beginning of 2017 and has not yet been paid anything for its efforts.  A reasonable rate must take into account what an attorney would charge for a case where he was asked to carry the expense and take a risk that, if he lost, he would not be paid at all.

15.     In prosecuting this case as local counsel, the Firm invested 79.4 hours to investigate the case, prepare initial pleadings, engage in motions practice, conduct written discovery, depositions and mediation.  In particular, undersigned counsel represented Plaintiffs at each of the four depositions taken in this matter and during an all-day mediation.  Combined with the $500 hourly rate requested above, the Firm's lodestar investment in this case is $39,700 plus court reporter costs of $1,534.  Combined with that of co-counsel the Shavitz Law Group,

P.A. (collectively, "Plaintiffs' Counsel"), Plaintiffs' Counsel's lodestar investment in this case is $106,550.00 (representing a total of 266.2 in billed time) plus actual costs of $6,819.64.  In the exercise of professional billing judgment, however, and given that the case did not proceed as a collective action, the Firm believes that a reduction in its lodestar is reasonable.  As discussed in the Motion, the parties have negotiated a flat payment of attorney's fees and costs in the amount of $77,599.15 (reflecting $70,779.51 in fees and $6,819.64 in costs).  This reflects an approximate 34% reduction in Plaintiffs' Counsel's actual lodestar.

I certify under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my personal knowledge.

Date:  October 30, 2017

_____

## Curriculum Vitae

**Education**

    University of Kansas (B.A., 1992), Philosophy and Psychology
    University of Michigan School of Law (J.D., 1996)

**Employment**

    The Law Offices of Brian D. Gonzales, PLLC, managing member, 2008-present
    Fognani & Faught, PLLC, associate and member, 1998-2008
    Gibson Dunn & Crutcher, LLP, associate, 1996-1998

**Admissions**

    Texas, 1996
    Colorado, 1998

**Organizations**

    Colorado Bar Association
    Colorado Plaintiff Employment Lawyers Association
    National Employment Lawyers Association
    Worker Injury Law & Advocacy Group (Wage and Hour Section)
    Colorado Wage Theft Task Force
    Towards Justice Board of Directors

**Litigation Experience**

- Representation of thousands of employees in class, collective and individual litigation under the Fair Labor Standards Act, the Colorado Minimum Wage Act and the Colorado Wage Claim Act relating to failure to pay earned wages and compensation.

- Defense of an oil and gas pipeline company in a consolidated groundwater contamination lawsuit, which included a medical monitoring class action on behalf of several hundred thousand area residents, as well as twelve direct actions on behalf of 900 individual personal injury plaintiffs.

- Defense of a construction management firm in a suit by a project owner seeking $14 million in damages for an alleged failure to manage construction adequately.

- Prosecution of a derivative shareholder lawsuit on behalf of minority investors in a closely-held mineral exploration and development company.  Litigation contended that the majority investors misappropriated a valuable business

EXHIBIT -1

opportunity, *i.e.*, the company's option to purchase land at a price tens of millions of dollars below its actual value.

- Prosecution of a breach of contract class action on behalf of hundreds of former independent dealers of a home security company seeking in excess of $100 million in damages.

- Prosecution of a Resource Conservation and Recovery Act lawsuit on behalf of employees seeking remediation of unsafe work conditions at the Denver International Airport.

- Defense of a manufacturing company in a products liability class action seeking approximately $250 million in damages.

- Defense of a manufacturing company in a Comprehensive Environmental Response Compensation and Liability Act (CERCLA) cost recovery action seeking approximately $12 million in damages.

- Defense of a former company officer in a CERCLA cost recovery action brought by the United States seeking in excess of $150 million in damages.

# A firm-by-firm sampling of billing rates nationwide

*The National Law Journal asked the respondents to its 2003 survey of the nation's 250 largest law firms to provide hourly billing rate information for partners and associates firmwide and in their principal offices. The firms that supplied this information—including some firms that are not in the NLJ 250—are listed below in alphabetical order. The number after a firm's name indicates the total number of attorneys at that firm. The city listed below the name of a firm is the location of the firm's principal office or its largest office. Unless otherwise indicated, the rates provided are firmwide rates; an asterisk indicates rates at the principal or largest office only.*

## A B C D

**Adams and Reese (200)**
(New Orleans)
Partners $170-$350
Associates $130-$235

**Adorno & Yoss (134)**
(Miami)
Partners $200-$450*
Associates $100-$250*

**Akin Gump Strauss Hauer & Feld (977)**
(Washington)
Partners $350-$625
Associates $175-$325

**Alston & Bird (701)**
(Atlanta)
Partners $340-$600
Associates $175-$375

**Andrews & Kurth (394)**
(Houston)
Partners $325-$625
Associates $180-$435

**Arent Fox Kintner Plotkin & Kahn (257)**
(Washington)
Partners $340-$530
Associates $175-$355

**Armstrong Teasdale (237)**
(St. Louis)
Partners $200-$325
Associates $110-$240

**Baker Donelson Bearman Caldwell & Berkowitz (359)**
(Memphis, Tenn.)
Partners $195-$475
Associates $125-$265

**Ballard Spahr Andrews & Ingersoll (464)**
(Philadelphia)
Partners $260-$575
Associates $155-$315

**Bass, Berry & Sims (153)**
(Nashville, Tenn.)
Partners $200-$425
Associates $125-$270

**Bell, Boyd & Lloyd (229)**
(Chicago)
Partners $290-$575
Associates $200-$315

**Blackwell Sanders Peper Martin (287)**
(Kansas City, Mo.)
Partners $175-$430
Associates $135-$225

**Blank Rome (450)**
(Philadelphia)
Partners $250-$600

**Bond, Schoeneck & King (152)**
(Syracuse, N.Y.)
Partners $185-$325
Associates $130-$185

**Bracewell & Patterson (380)**
(Houston)
Partners $225-$650
Associates $155-$335

**Bradley, Arant, Rose & White (194)**
(Birmingham, Ala.)
Partners $210-$365
Associates $160-$215

**Brinks Hofer Gilson & Lione (152)**
(Chicago)
Partners $300-$525
Associates $175-$360

**Brown Raysman Millstein Felder & Steiner (224)**
(New York)
Partners $350-$525
Associates $175-$400

**Bryan Cave (808)**
(St. Louis)
Partners $225-$550
Associates $120-$350

**Bachalter, Nemer, Fields & Younger (140)**
(Los Angeles)
Partners $315-$500
Associates $160-$375

**Buchanan Ingersoll (356)**
(Pittsburgh)
Partners $225-$720
Associates $150-$390

**Buckingham, Doolittle & Burroughs (144)**
(Akron, Ohio)
Partners $160-$300
Associates $110-$220

**Bullivant Houser Bailey (166)**
(Portland, Ore.)
Partners $175-$350
Associates $140-$250

**Burr & Forman (177)**
(Birmingham, Ala.)
Partners $225-$375*
Associates $140-$250*

**Butzel Long (206)**
(Detroit)
Partners $200-$400
Associates $140-$210

**Carlton Fields (220)**
(Tampa, Fla.)
Partners $235-$450
Associates $150-$305

**Choate, Hall & Stewart (165)**
(Boston)
Partners $390-$595
Associates $215-$370

**Cooley Godward (465)**
(Palo Alto, Calif.)
Partners $340-$675
Associates $170-$420

**Covington & Burling (514)**
(Washington)
Partners $375-$600
Associates $160-$390

**Cozen O'Connor (458)**
(Philadelphia)
Partners $205-$500
Associates $135-$365

**Curtis, Mallet-Prevost, Colt & Mosle (170)**
(New York)
Partners $410-$645
Associates $150-$465

**Davis Graham & Stubbs (84)**
(Denver)
Partners $225-$425
Associates $130-$220

**Davis Wright Tremaine (385)**
(Seattle)
Partners $230-$550
Associates $145-$295

**Day, Berry & Howard (245)**
(Hartford, Conn.)
Partners $290-$475
Associates $170-$320

**Dickinson Wright (202)**
(Detroit)
Partners $220-$425
Associates $145-$220

**Dickstein Shapiro Morin & Oshinsky (308)**
(Washington)
Partners $350-$600
Associates $195-$350

**Dinsmore & Shohl (270)**
(Cincinnati)
Partners $190-$345
Associates $125-$215

**Duane Morris (578)**
(Philadelphia)
Partners $225-$565
Associates $165-$365

**Dykema Gossett (275)**
(Detroit)
Partners $220-$450
Associates $120-$250

## E F G

**Eckert Seamans Cherin & McKett (222)**
(Pittsburgh)
Partners $235-$450
Associates $145-$250

**Edwards & Angell (315)**
(Boston)
Partners $225-$550
Associates $135-$280

**Epstein Becker & Green (357)**
(New York)
Partners $250-$550
Associates $130-$365

**Fenwick & West (275)**
(Mountain View, Calif.)
Partners $350-$560
Associates $195-$450

**Fish & Richardson (320)**
(Boston)
Partners $340-$575
Associates $195-$355

**Fowler White Boggs Banker (199)**
(Tampa, Fla.)
Partners $125-$350
Associates $90-$210

**Frost Brown Todd (382)**
(Louisville, Ky.)
Partners $175-$390
Associates $130-$195

**Gardere Wynne Sewell (295)**
(Dallas)
Partners $290-$575
Associates $160-$340

## H-K

**Haight, Brown & Bonesteel (93)**
(Los Angeles)
Partners $200-$350
Associates $150-$275

**Hale and Dorr (509)**
(Boston)
Partners $375-$695
Associates $215-$420

**Harris Beach (171)**
(Rochester, N.Y.)
Partners $225-$350
Associates $110-$235

**Haynes and Boone (468)**
(Dallas)
Partners $180-$550
Associates $165-$380

**Hodgson Russ (199)**
(Buffalo, N.Y.)
Partners $200-$490
Associates $120-$330

**Hogan & Hartson (957)**
(Washington)
Partners $230-$650
Associates $170-$370

**Holland & Knight (1,184)**
(Washington)
Partners $220-$600
Associates $140-$385

**Holme Roberts & Owen (213)**
(Denver)
Partners $240-$525
Associates $160-$335

**Hughes Hubbard & Reed (327)**
(New York)
Partners $425-$650
Associates $195-$460

**Husch & Eppenberger (315)**
(St. Louis)
Partners $145-$350
Associates $110-$190

**Jackson & Kelly (191)**
(Charleston, W.Va.)
Partners $170-$395
Associates $110-$180

**Jackson Lewis (358)**
(White Plains, N.Y.)
Partners $260-$450
Associates $155-$360

**Jenkens & Gilchrist (480)**
(Dallas)
Partners $300-$725
Associates $175-$470

**Gibbons, Del Deo, Dolan, Griffinger & Vecchione (164)**
(Newark, N.J.)
Partners $240-$615
Associates $155-$300

**Gray Cary Ware & Freidenrich (257)**
(Palo Alto, Calif.)
Partners $335-$725
Associates $215-$415

**Greenberg Glusker (110)**
(Los Angeles)
Partners $335-$850
Associates $210-$310

**Greenberg Traurig (1,023)**
(Miami)
Partners $250-$850
Associates $140-$500

EXHIBIT -2

# Law firm billing rates across the United States

'RATES' FROM PAGE 19

**Jenner & Block (421)**
(Chicago)
Partners $380-$700
Associates $185-$375

**Jones, Walker, Waechter, Poitevent, Carrère & Denègre (220)**
(New Orleans)
Partners $170-$350
Associates $125-$210

**Kelley Drye & Warren (332)**
(New York)
Partners $320-$650
Associates $185-$375

**Kramer Levin Naftalis & Frankel (295)**
(New York)
Partners $475-$700
Associates $235-$475

## LMN

**Lane Powell Spears Lubersky (175)**
(Seattle)
Partners $240-$395
Associates $175-$265

**Lewis, Rice & Fingersh (170)**
(St. Louis)
Partners $220-$370
Associates $125-$290

**Littler Mendelson (336)**
(San Francisco)
Partners $215-$480
Associates $145-$360

**Locke Liddell & Sapp (397)**
(Dallas)
Partners $300-$620
Associates $150-$340

**Loeb & Loeb (178)**
(Los Angeles)
Partners $350-$685
Associates $195-$350

**Lord, Bissell & Brook (331)**
(Chicago)
Partners $265-$595
Associates $165-$335

**Lowenstein Sandler (221)**
(Roseland, N.J.)
Partners $285-$535
Associates $150-$325

**Luce, Forward, Hamilton & Scripps (180)**
(San Diego)
Partners $310-$500
Associates $160-$335

**Manatt, Phelps & Phillips (295)**
(Los Angeles)
Partners $400-$625
Associates $210-$375

**Marshall, Dennehey, Warner, Coleman & Goggin (328)**
(Philadelphia)
Partners $135-$250
Associates $125-$220

**McCarter & English (291)**
(Newark, N.J.)
Partners $250-$495
Associates $160-$260+

**McGuireWoods (553)**
(Richmond, Va.)
Partners $250-$575
Associates $155-$350

**Michael Best & Friedrich (357)**
(Milwaukee)
Partners $155-$450
Associates $155-$250

**Miller, Canfield, Paddock and Stone (331)**
(Detroit)
Partners $230-$495
Associates $150-$285

**Miller Nash (123)**
(Portland, Ore.)
Partners $215-$360
Associates $135-$250

**Montgomery, McCracken, Walker & Rhoads (162)**
(Philadelphia)
Partners $275-$475
Associates $150-$280

**Nelson Mullins Riley & Scarborough (322)**
(Columbia, S.C.)
Partners $200-$475
Associates $150-$270

**Nossaman, Guthner, Knox & Elliott (133)**
(San Francisco)
Partners $265-$475
Associates $185-$290

## O-R

**Ogletree, Deakins, Nash, Smoak & Stewart (178)**
(Atlanta)
Partners $275-$450
Associates $160-$275

**Parker, Poe, Adams & Bernstein (146)**
(Charlotte, N.C.)
Partners $160-$400*
Associates $120-$220*

**Patton Boggs (306)**
(Washington)
Partners $240-$735
Associates $150-$400

**Pennie & Edmonds (190)**
(New York)
Partners $370-$550
Associates $190-$340

**Pepper Hamilton (402)**
(Philadelphia)
Partners $255-$550
Associates $160-$300

**Perkins Coie (595)**
(Seattle)
Partners $175-$495
Associates $130-$375

**Phelps Dunbar (241)**
(New Orleans)
Partners $175-$350
Associates $125-$185

**Phillips Lytle (154)**
(Buffalo, N.Y.)
Partners $196-$370
Associates $105-$290

**Piper Rudnick (946)**
(Chicago)
Partners $335-$750
Associates $200-$425

**Pitney, Hardin, Kipp & Szuch (197)**
(Florham Park, N.J.)
Partners $280-$525*
Associates $160-$310*

**Powell, Goldstein, Frazer & Murphy (282)**
(Atlanta)
Partners $310-$515
Associates $150-$310

**Preston Gates & Ellis (404)**
(Seattle)
Partners $190-$530
Associates $130-$410

**Reed Smith (967)**
(Pittsburgh)
Partners $245-$705
Associates $150-$535

**Robinson & Cole (224)**
(Hartford, Conn.)
Partners $260-$500
Associates $160-$240

**Roetzel & Andress (180)**
(Akron, Ohio)
Partners $225-$325
Associates $160-$190

**Rutan & Tucker (157)**
(Costa Mesa, Calif.)
Partners $285-$450
Associates $170-$300

## S-W

**Saul Ewing (232)**
(Philadelphia)
Partners $270-$505
Associates $150-$270

**Schnader Harrison Segal & Lewis (170)**
(Philadelphia)
Partners $230-$480
Associates $125-$270

**Seyfarth Shaw (550)**
(Chicago)
Partners $205-$600
Associates $165-$350

**Shaw Pittman (378)**
(Washington)
Partners $325-$600
Associates $185-$425

**Sheppard, Mullin, Richter & Hampton (388)**
(Los Angeles)
Partners $340-$575
Associates $210-$360

**Shook, Hardy & Bacon (601)**
(Kansas City, Mo.)
Partners $185-$635
Associates $135-$380

**Shumaker, Loop & Kendrick (158)**
(Toledo, Ohio)
Partners $200-$375
Associates $140-$210

**Sills Cummis Radin Tischman Epstein & Gross (180)**
(Newark, N.J.)
Partners $325-$525*
Associates $150-$325*

**Smith, Gambrell & Russell (184)**
(Atlanta)
Partners $235-$485
Associates $135-$305

**Steel Hector & Davis (184)**
(Miami)
Partners $270-$650
Associates $180-$290

**Stinson Morrison Hecker (350)**
(Kansas City, Mo.)
Partners $205-$395
Associates $130-$225

**Stoel Rives (366)**
(Portland, Ore.)
Partners $210-$430
Associates $140-$350

**Stradley Ronon Stevens & Young (144)**
(Philadelphia)
Partners $250-$500
Associates $145-$265

**Strasburger & Price (205)**
(Dallas)
Partners $215-$475
Associates $130-$275

**Sutherland Asbill & Brennan (533)**
(Atlanta)
Partners $300-$565
Associates $175-$325

**Swidler Berlin Shereff Friedman (271)**
(Washington)
Partners $340-$625
Associates $180-$395

**Thelen Reid & Priest (467)**
(San Francisco)
Partners $305-$625*
Associates $175-$400*

**Thompson Coburn (302)**
(St. Louis)
Partners $215-$425
Associates $125-$220

**Thompson Hine (385)**
(Cleveland)
Partners $215-$460
Associates $125-$280

**Thompson & Knight (370)**
(Dallas)
Partners $280-$500
Associates $150-$270

**Townsend and Townsend and Crew (152)**
(San Francisco)
Partners $360-$525
Associates $150-$360

**Troutman Sanders (527)**
(Atlanta)
Partners $285-$565
Associates $175-$340

**Vedder, Price, Kaufman & Kammholz (214)**
(Chicago)
Partners $285-$525
Associates $170-$285

**Venable (442)**
(Washington)
Partners $260-$800
Associates $175-$500

**Vorys, Sater, Seymour and Pease (344)**
(Columbus, Ohio)
Partners $260-$400
Associates $150-$320

**Whiteford, Taylor & Preston (152)**
(Baltimore)
Partners $260-$375
Associates $160-$260

**Wiley Rein & Fielding (245)**
(Washington)
Partners $325-$600
Associates $175-$310

**Williams & Connolly (227)**
(Washington)
Partners $360-$700
Associates $200-$350

**Williams Mullen (244)**
(Richmond, Va.)
Partners $200-$400
Associates $120-$225

**Winstead Sechrest & Minick (335)**
(Dallas)
Partners $250-$595
Associates $125-$325

**Womble Carlyle Sandridge & Rice (459)**
(Winston-Salem, N.C.)
Partners $205-$525
Associates $130-$290

**Wyatt, Tarrant & Combs (183)**
(Louisville, Ky.)
Partners $180-$320
Associates $110-$200 NLJ



**REDUCED HOURS, FULL SUCCESS:**

**PART-TIME PARTNERS IN U.S. LAW FIRMS**

# SUMMARY OF FINDINGS: DENVER LAW FIRMS

*by*

Cynthia Thomas Calvert
Linda Bray Chanow
*and*
Linda Marks

Copyright 2010 The Project for Attorney Retention

EXHIBIT -3

# INTRODUCTION

Denver[1] was one of the three cities studied for PAR's part-time partner report, *Reduced Hours, Full Success. Part-Time Partners in U S. Law Firms*[2] Denver was included thanks to the interest and efforts of the Colorado Women's Bar Association Foundation, as well as its co-sponsors, the Colorado Bar Association, Faegre & Benson LLP and the Donnell Initiative Fund.

This paper is intended to supplement the main report and identifies the findings and results that are specific to the Denver respondents. Although the characteristics and experiences of the attorneys interviewed from Denver tended to mirror the characteristics and experiences of the attorneys interviewed elsewhere, some noteworthy differences do exist and will be discussed herein.

## *Demographics*

Denver has 592 partners among NALP-member firms, as of 2009.[3] Denver has one of the highest percentages of women partners in the country, 22 55.[4] Also according to NALP, 4.4% of Denver's partners work part-time, higher than the national average.[5] About 10% of female partners and almost 3% of male partners in Denver work part-time.[6] The rate for male partners is another higher than average rate.[7]

As part of the overall study, PAR interviewed 24 part-time lawyers from Denver, 21 females and three males. Fourteen are equity partners (58%), seven are non-equity partners (29%), and three are counsel (13%). One partner of color participated. In addition, PAR interviewed four managing partners from Denver.

---

1   All but two of the respondents from Colorado practiced law in Denver

2   Cynthia Thomas Calvert, Linda Bray Chanow, and Linda Marks, *Reduced Hours  Full Success; Part-Time Partners in U S Law Firms* (Project for Attorney Retention, September 2009), available at http://www.pardc org/Publications/Part-TimePartner pdf.

3   NALP, *Most Lawyers Working Part-time are Women – Overall Number of Lawyers Working Part-Time Remains Small, Rate Little Changed Over Time* (Dec 17  2009), available at http://www nalp org/parttimesched2009  This is down from 737 in 2008  NALP, *Women Vastly Outnumber Men Among Part-Time Lawyers – Overall  Number of Lawyers Working Part-Time Is Small, Rate Little Changed Over Time* (Dec  18, 2008), available at http://www nalp org/parttimelawyers

4   NALP, *Law Firm Diversity Demographics Show Little Change  Despite Economic Downturn* (Oct  21, 2009), available at http://www nalp org/oct09lawfirmdiversity (women are 19 21% of partners nationally).

5   *See* NALP, *Most Lawyers Working Part-time are Women, supra* n 3 (3 5% of partners nationally work part-time)  Note that the Denver figure decreased from 5.2% in 2008 to 4 4% in 2009, while the number of partners nationally increased from 3.2% in 2008 to 3 5% in 2009  *See* NALP  *Women Vastly Outnumber Men Among Part-Time Lawyers, supra* n 3

6   *See* NALP, *Most Lawyers Working Part-time are Women, supra* n 3  Note that this number has decreased from 3 3% in 2008

7   *Id.* Denver has one of the highest percentages of male partners working part-time (tied with Philadelphia and exceeded by only Minneapolis/St  Paul, Portland, Richmond, San Diego, San Francisco, San Jose and St  Louis)

The Denver respondents came from a proportionally greater number of small firms than the respondents in the other two markets on which the study focused:

### Respondents By Firm size

| 50 or fewer attorneys | 51 – 100 attorneys | 101 – 250 attorneys | 251 – 500 attorneys | 501 – 750 attorneys | 751 or more attorneys |
|---|---|---|---|---|---|
| 8[8] | 1 | 5 | 5 | 2 | 3 |

The participation of the Denver respondents from the small and mid-sized firms added breadth to the overall study and made its findings more relevant to mid-size legal markets in general.

The Denver respondents practiced in a variety of practice areas, similar to the overall respondent group:

### Respondents By Practice Area

| Litigation | Labor and Employment | Real Estate | Corporate | Securities | Intellectual Property | Mergers and Acquisitions | Immigration | Other |
|---|---|---|---|---|---|---|---|---|
| 6 | 6 | 2 | 1 | 1 | 2 | 2 | 2 | 2 |

Seventy-one percent of female respondents in Denver (as compared to 94% of the female respondents in the overall study) reduced their hours for family-related reasons, as did 67% of the male respondents (57% in the overall study). Three respondents reduced their hours for health reasons, two as a phase-in to retirement, and two to have a better quality of life. All respondents had children, although some had reached adulthood and were no longer living at home. With respect to household chores, 80% of female respondents in Denver and in the study overall reported doing half or more of the work, while one-third of the male respondents in Denver and only a quarter of the males in the study overall can make the same claim.

---

8   Six of the respondents practice in firms that have ten or fewer lawyers

# DENVER PART-TIME PARTNERS: KEY FINDINGS

### *Types of schedules worked*

Similar to the findings discussed in the main report, Denver participants reported that their schedules vary according to client needs. The respondents were fairly evenly distributed among type of schedule; 35% reported working annualized hours (hours fluctuating significantly in response to client deadlines, with periods of long hours offset by time out of the office); 35% work fewer days per week; and 26% work fewer hours per day.

### *Flexible work arrangements and retention*

The majority (71%) of Denver participants began working at their firms on a full-time basis. Of those who were promoted to partner, 62% were working reduced hours prior to the partnership decision. This number indicates that respondents' firms are doing well in terms of promoting part-time lawyers.

For Denver participants, the availability of reduced schedules was every bit as important to their firms' ability to retain them as for the participant group as a whole. Most (88%) said, some quite forcefully, that they would not have stayed at their firms if they could not have worked part-time. Several said that they would not leave their firms because they did not think they could find as good a part-time arrangement at another firm.

### *Client service*

All respondents but one indicated that their part-time schedules did not impact client service. The lone respondent said that client service may be impacted occasionally. Most respondents stated that they are available all the time to their clients, even when not in the office, and they meet deadlines. One credited good management of case staffing by her firm as a reason her clients were not affected by her schedule. Several credited technology for allowing them to handle pressing matters when not in the office, although a couple noted that technology prevented them from having any "down" or private time.

### *Financial success*

**Revenue Generation.** Similar to the overall group, most respondents (58%) billed between 1200 and 1600 hours per year. One-third billed less than 1200 hours per year (compared to 22% in the overall group), and 8% billed above 1600 hours (compared to 14% in the overall group). Therefore, Denver respondents had slightly more attorneys working a significantly reduced schedule than the overall group.

Respondents (n=11) reported billable hour rates between $175 and $715. A little more than a third reported rates below $300 per hour (compared to 12% in the overall group), and 45% reported rates between $300

and $500 (compared to 30% in the overall group). The highest billable rates, those over $500 per hour, constituted approximately 20% of the respondents (compared to 58% in the overall group). Therefore, the Denver respondents as a group had significantly lower billable rates. All stated that their billing rates were not affected by their part-time status, that is, that their rates were similar to the rates charged by full-time lawyers at their firms who were similar to them in seniority and expertise. This mirrors the findings of the overall group.

A partner billing $400 per hour for 1400 hours per year would generate $560,000 annually from his or her time alone.[9] On a weekly basis, a 1400 year equates to approximately 28.5 billable hours per week with three weeks of vacation.

**Business Origination.** When asked about the impact of their reduced hours on business development activities, 61% of respondents said that they did as much or even more business development as their full-time counterparts. Equity partners tended to engage in business development more regularly than attorneys in non-equity or of counsel positions. Of the 61% of respondents who stated that they engaged in business development equal to or greater than their full-time counterparts, 72% were equity partners; of those reporting that they do less business development, 57% were non-equity partners.

## Law Firm Governance

Like the participant group as a whole, most Denver participants (80%) reported being as involved or more involved in firm governance as their full-time counterparts. Only one respondent reported cutting back non-billable work. The rest said they have been a managing partner, served on the executive committee, been practice group heads, and served on or headed the hiring or recruiting committee and other important committees. They are also actively involved in associate training and mentoring, and many do pro bono work.

Of those who were not actively involved in firm governance, two were paid on an hourly basis and were not compensated for non-billable time.

## Stigma

Denver participants reported feeling stigmatized in the same proportions as study participants as a whole (60% report no stigma). Interestingly, however, a significantly higher proportion of equity partners reported stigma and a significantly higher proportion of income partners reported no stigma:

|  | Reported No Stigma | | Reported some or limited stigma | | Reported Stigma | |
|---|---|---|---|---|---|---|
|  | Denver | All | Denver | All | Denver | All |
| Equity Partners | 55% | 69% | 0% | 4% | 45% | 27% |
| Non-equity Partners | 63% | 45% | 13% | 36% | 25% | 18% |

A review of the respondents' answers does not immediately reveal the reason for the differences.

---

9   For comparison purposes, we note that two years prior to the time the Denver participants were interviewed, revenues per lawyer in Denver were reportedly $559.135. William D. Henderson and Arthur S. Alderson, *The Changing Economic Geography of Large U.S. Law Firms* (May 16, 2008), 3rd Annual Conference on Empirical Legal Studies Papers. available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1134223 (using 2006 data from American Lawyer and National Law Journal surveys).

The Denver participants' comments regarding stigma were similar to those made by the participants quoted in the main report While many said they felt no stigma and some said the felt affirmatively supported, several respondents discussed attitudes within their firms that part-time lawyers were not committed to the firm, had taken their careers off-track, and were not as valuable or powerful as full-time lawyers One noted that she would likely be a partner if not part-time

## *Compensation*

In discussing compensation systems in Denver, it is more useful to talk about firms than individual lawyers because in some instances, we interviewed more than one partner from a particular firm. Partners reported that six firms compensated partners using shares or units that had a dollar value based on the firm's profits, four firms placed partners in tiers or levels based on their compensation, and one based compensation solely on hours billed and collected None were in firms that used a lockstep system or a system that based compensation solely on the discretion of one or several firm leaders. In addition, six non-equity respondents were compensated on a salaried basis, and three on an hourly basis

As with the group of partners as a whole, most Denver partners who were at firms that use shares or tiers were awarded their shares or placed in their tiers as if they were full-time and then given a percentage of their shares or what others in their tiers received based on the percentage schedule they worked. We noted one important difference, however: there were more firms in Denver than any other city that "double dinged" their part-time partners by placing them in a lower tier based on their revenue generation and origination and then paying them a percentage of their tier; the placement in the lower tier happened based on a formula (or points) for some, and by discretion for others. Additionally, partners were more likely in Denver than other cities to be awarded a fractional share of units or shares to reflect their reduced billable hours, rather than be awarded their full shares and paid a fraction of the shares' values proportional to their schedules. As articulated in the main report by one of the respondent partners, this practice affects the partners' shares when the partner returns to a full-time schedule [10]

At least one of the firms has an express policy that provides for a "haircut," that is, the policy provides that partners are to be paid a fraction of full-time compensation that is smaller than the fraction of full-time hours that they work.[11] One partner stated that her former firm imposed a haircut, so instead of working part-time at that firm, she left and went to a firm with a better part-time program

At least two of equity partners stated that they believed they were underpaid. When comparing their contributions and those of similarly-situated partners working a standard schedule, they felt they received a greater reduction in compensation than their reduced hours warranted.

The six respondents who were salaried stated that their firms used different bases for determining the amount of their compensation Two were paid negotiated amounts, one was paid a percentage of what she had been making while full-time, one was paid a percentage of what a full-time partner at her level would make, one was paid based on her contribution to the firm, and one was paid a percentage of what an associate would

---

10    *Reduced Hours, Full Success, supra* n  2, at 19-20

11    For a discussion of "haircuts,' see *Reduced Hours  Full Success, supra* n  2, at 19, 21

make. Those paid on an hourly basis varied similarly; one was paid a negotiated amount, one was paid an amount based on what a full-time partner would make, and one was paid based on her experience and overhead

## *Satisfaction*

Almost three-quarters of the respondents indicated they are "very satisfied" with their part-time arrangements The respondents attributed their satisfaction to schedule flexibility, being treated like a professional, and interesting work The remaining quarter was "satisfied," noting a few factors that prevented them from being completely content with their arrangements. These factors included firm policies that viewed part-time arrangements as temporary and requiring them to re-apply at intervals for reduced-hours work, and policies that limited the reasons for which they could reduce their hours (such as only for child care or care of a chronically ill family member) [12] In addition, at least one firm will not allow partners to have equity status if they work part-time on more than a temporary basis

Almost all of the respondents indicated they plan to stay with their current firm at least for the next several years

---

12  PAR has previously discussed the importance of reason-neutrality in part-time programs; limiting the purposes for which one
   can work part-time does not effectively retain all the lawyers the firm wants to keep, forces the firm to decide which reasons
   are worthy, and can create "mommy tracks." *See* Joan C Williams & Cynthia Thomas Calvert, *Balanced Hours Effective Part-
   Time Policies for Washington Firms* (2000), http://www.pardc.org/Publications/BalancedHours shtml, and JOAN C. WILLIAMS &
   CYNTHIA THOMAS CALVERT, SOLVING THE PART-TIME PUZZLE: THE LAW FIRM'S GUIDE TO BALANCED HOURS (NALP 2004)

# CONCLUSION

The experience of most of the Denver participants mirrors that of the participant group as a whole. Most of their firms have implemented best practices for reduced-hours programs, and it appears they are reaping the benefits by retaining highly experienced, very loyal partners who are providing excellent client service, generating new business, and serving as role models for younger lawyer and recruits.

A few of the participants reported that their firms have aspects of their part-time programs that could be improved. These include: limiting the reasons for which partners can work reduced hours; requiring part-time partners to re-apply for reduced schedules every year, limiting the period of time that equity partners can work reduced hours, double reducing part-time partners' compensation, and tolerating stigma associated with practicing part-time.

2014 EDITION

# The 42nd Annual Survey of Law Firm Economics

STAFFING
RATIOS

TOTAL
COMP

BILLABLE
HOURS

LAW FIRM
FINANCIALS

HOURLY
RATES

ALM
LEGAL INTELLIGENCE

THE NATIONAL
LAW JOURNAL

almlegalintel.com | 866.77.5972

EXHIBIT -4

# THE SURVEY OF LAW FIRM ECONOMICS

## 2014 Edition

Conducted and Published by

THE NATIONAL
LAW JOURNAL

– and –

ALM
LEGAL
INTELLIGENCE

120 Broadway, 5th Floor
New York, NY 10271
(888) 770-5647
almlegalintel@alm.com
www.almlegalintelligence.com

Release Date: July 23, 2014

All rights reserved. No part of this work may be reproduced or copied in any form or by any means, graphic, electronic or mechanical, including photocopying, recording, taping, or information and retrieval systems, without prior written permission of the publisher. For permission, contact customer service at 888.770.5647 or almlegalintel@alm.com.

© 2014 ALM Media Properties LLC

# INTRODUCTION

The *National Law Journal's* **Survey of Law Firm Economics, 2014 Edition** (based on 2013 data) is one of the most complete, accurate and up-to-date set of economic statistics and financial data available about the legal profession. This year's survey contains information from 8,194 lawyers including 2,644 associates, 4,853 partners/shareholders (equity and non-equity), 474 active counsel and 197 staff lawyers working in 162 U.S. law firms. In its 42nd year, the survey remains an invaluable tool for managers of law firms.

To be a useful tool, the survey must provide the relevant information required by law firm managers. ALM Legal Intelligence partners with the International Paralegal Management Association each year to develop and publish a more comprehensive tool for managing paralegal positions. If you are interested in paralegal data, please contact ALM Legal Intelligence for product information and pricing.

ALM Legal Intelligence is committed to meeting the information needs of the legal profession and, as such, invites you as a purchaser and/or participant to call or write us with your candid critique, suggestions and questions. The survey will continue to improve only through our ability to understand your evolving needs for information. We invite you to contact us with any thoughts and/or questions. E-mail us at alintelgalintel@alm.com.

3

## REGION BY YEARS OF LEGAL EXPERIENCE
### STANDARD HOURLY BILLING RATES
#### As of January 1, 2014

| Region/Years of Experience | | Number of Offices | Number of Lawyers | Average $ | Lower Quartile $ | Median $ | Upper Quartile $ | Ninth Decile $ |
|---|---|---|---|---|---|---|---|---|
| | Under 2 Years | 6 | 19 | 207 | 160 | 210 | 245 | 260 |
| | 2 or 3 Years | 7 | 30 | 215 | 170 | 200 | 270 | 295 |
| | 4 or 5 Years | 6 | 23 | 246 | 190 | 225 | 310 | 334 |
| | 6 or 7 Years | 7 | 44 | 285 | 201 | 260 | 315 | 360 |
| Mountain | 8 to 10 Years | 8 | 51 | 313 | 250 | 310 | 375 | 405 |
| | 11 to 15 Years | 8 | 45 | 329 | 255 | 355 | 395 | 432 |
| | 16 to 20 Years | 7 | 48 | 385 | 275 | 380 | 429 | 462 |
| | 21 to 30 Years | 8 | 90 | 408 | 300 | 440 | 485 | 537 |
| | 31 or More Years | 8 | 112 | 448 | 343 | 475 | 543 | 600 |
| | Under 2 Years | 5 | 15 | 197 | — | 185 | — | — |
| | 2 or 3 Years | 7 | 22 | 218 | 180 | 215 | 246 | 257 |
| | 4 or 5 Years | 7 | 14 | 259 | — | 255 | — | — |
| | 6 or 7 Years | 6 | 17 | 284 | 255 | 290 | 307 | 383 |
| Pacific | 8 to 10 Years | 7 | 20 | 327 | 275 | 325 | 369 | 399 |
| | 11 to 15 Years | 7 | 23 | 320 | 276 | 325 | 365 | 398 |
| | 16 to 20 Years | 7 | 20 | 339 | 315 | 333 | 369 | 423 |
| | 21 to 30 Years | 8 | 48 | 377 | 325 | 368 | 410 | 513 |
| | 31 or More Years | 8 | 55 | 405 | 350 | 400 | 450 | 516 |

**INDIVIDUAL LITIGATION SPECIALTIES**
**STANDARD HOURLY BILLING RATES**
**As of January 1, 2014**

| Specialty/Status | | Number of Offices | Number of Lawyers | Average $ | RATE | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Lower Quartile $ | Median $ | Upper Quartile $ | Ninth Decile $ |
| Bankruptcy | Partner/Shareholder-Equity/Non-Equity | 34 | 68 | 400 | 305 | 388 | 496 | 547 |
| | Associate/Staff Lawyer | 16 | 32 | 281 | 227 | 280 | 335 | 421 |
| Collections | Partner/Shareholder-Equity/Non-Equity | 10 | 20 | 302 | 229 | 285 | 350 | 463 |
| Comml/Contract | Partner/Shareholder-Equity/Non-Equity | 40 | 260 | 398 | 325 | 375 | 459 | 585 |
| | Associate/Staff Lawyer | 31 | 177 | 265 | 215 | 257 | 310 | 350 |
| Criminal | Partner/Shareholder-Equity/Non-Equity | 9 | 12 | 439 | – | 423 | – | – |
| Educational | Partner/Shareholder-Equity/Non-Equity | 5 | 10 | 425 | – | – | – | – |
| Insured Defense | Partner/Shareholder-Equity/Non-Equity | 35 | 228 | 243 | 180 | 214 | 300 | 375 |
| | Associate/Staff Lawyer | 20 | 222 | 168 | 144 | 184 | 182 | 207 |
| Self-Insured Defense | Partner/Shareholder-Equity/Non-Equity | 5 | 21 | 260 | 206 | 257 | 299 | 362 |
| Employment | Partner/Shareholder-Equity/Non-Equity | 40 | 156 | 369 | 300 | 355 | 434 | 481 |
| | Associate/Staff Lawyer | 27 | 87 | 271 | 225 | 255 | 305 | 372 |
| Environmental | Partner/Shareholder-Equity/Non-Equity | 20 | 64 | 379 | 325 | 363 | 435 | 493 |
| | Associate/Staff Lawyer | 8 | 22 | 261 | 219 | 260 | 315 | 329 |
| Family & Domestic Law | Partner/Shareholder-Equity/Non-Equity | 14 | 37 | 364 | 323 | 350 | 400 | 463 |
| | Associate/Staff Lawyer | 12 | 20 | 248 | 183 | 238 | 314 | 315 |
| Health Care | Partner/Shareholder-Equity/Non-Equity | 19 | 55 | 358 | 250 | 350 | 435 | 550 |
| | Associate/Staff Lawyer | 11 | 35 | 255 | 200 | 255 | 300 | 382 |
| Intellectual Property | Partner/Shareholder-Equity/Non-Equity | 14 | 27 | 401 | 330 | 380 | 470 | 579 |
| | Associate/Staff Lawyer | 5 | 8 | 239 | – | – | – | – |